*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BENJAMIN SCOTT URBANSKI,

      Defendant-Appellant.

FOR PUBLICATION
August 31, 2023
9:00 a.m.

No. 359011
Allegan Circuit Court
LC No. 2019-022856-FH

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

MALDONADO, J.

      Following a traffic stop, police suspected that defendant had been driving drunk, and two hours later, he submitted to blood testing. The testing found that his blood alcohol content (BAC) was .064 grams per 100 milliliters of blood, which is below the unlawful alcohol level of .08 that is strictly prohibited by MCL 257.625(1)(b). Pursuant to MCL 257.625a(6)(a), a driver's BAC is presumed to be the same at the time of the testing as it was at the time the driver operated the vehicle. At trial, there was no evidence presented to rebut this presumption and support an inference that defendant's BAC exceeded 0.08 at the time he drove; therefore, it is undisputed that a conviction for operating while intoxicated (OWI) could only be supported by a finding that defendant was "under the influence" of alcohol. MCL 257.625(1)(a). Despite this, the prosecutor urged the jury during closing arguments to find that defendant's BAC exceeded 0.08 at the time he drove, the court instructed the jury that it could convict defendant pursuant to the high BAC or "under the influence" theories, and the court did not instruct the jury to presume that defendant's BAC was the same when he drove as when it was tested. Defendant was found guilty of OWI, MCL 257.625(1),[1] and it cannot be ascertained from the record whether the jury impermissibly deduced that defendant's BAC exceeded 0.08 when he drove. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve 6 days' incarceration (time served). Defendant appeals by right, and because defense counsel failed to object to the prosecutor's

---

[1] Defendant was also charged with third-degree fleeing and eluding, MCL 257.602a(3)(a), but the jury found him not guilty of that charge.

improper argument, failed to object to the court's erroneous instructions, and failed to request an instruction regarding the presumption that defendant's BAC was only 0.064 when he was driving, we reverse. We also note that the trial court erred by sentencing defendant as a habitual offender because OWI is a misdemeanor. If defendant is retried and convicted, the court shall not sentence defendant as a habitual offender.

## I. FACTS

This case arose from a traffic stop that took place just after midnight on June 24, 2019. A deputy with the county sheriff's department testified that he was in uniform and driving a marked patrol car at approximately 12:30 a.m. when a car passed him traveling at "a high rate of speed" with its "bright headlights" engaged. The officer maintained that he turned around and was "able to briefly pace the suspect vehicle," and determined that it was moving at a little more than twice the posted speed limit of 35 miles per hour. According to the officer, he activated his emergency lights, after which defendant's vehicle initially started to slow down, but then accelerated. The officer then activated his siren, and that shortly afterward the vehicle pulled over. The officer identified defendant as the vehicle's sole occupant.

The officer further testified that defendant said "something to the effect of just being a little bit stupid," after which the officer placed defendant in handcuffs and advised him of his *Miranda*[2] rights. According to the officer, defendant's eyes were bloodshot and his speech was slurred, which along with "an odor of intoxicants that was coming from his person," caused the officer to suspect that defendant had been consuming alcohol. The officer reported that he obtained a warrant for a blood draw which was conducted at 2:30 a.m. The laboratory result from the State Police indicated that defendant had a BAC of 0.064 grams of alcohol per 100 milliliters of blood.

Defendant testified on his own behalf, and when he was asked on cross-examination how much alcohol he drank on the night in question, defendant replied: "Probably three drinks. Maybe four," at "like 12:00, 12:15." Defendant answered in the negative when asked if "slamming . . . three alcoholic drinks" affected his driving. Defendant explained that he was not going far, and he testified that the alcohol would "hit" him after he reached his destination and then would dissipate before he drove again.

The trial court provided instructions on fleeing and eluding, and driving while intoxicated. The Court also instructed the jury on the "less serious charge of operating a motor vehicle while visibly impaired" as an alternative to driving while intoxicated. See MCL 257.625(3). As noted, the jury found defendant not guilty of fleeing and eluding, but guilty of driving while intoxicated.

On appeal, defendant raises some instructional issues, and also one of prosecutorial error. And, because defense counsel did not preserve any of those appellate objections below, defendant also claims that he was convicted without the benefit of the effective assistance of counsel.

## II. ANALYSIS

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Defendant argues that he was deprived of his right to the effective assistance of counsel. We agree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Id*. A defendant pressing a claim of ineffective assistance of counsel must overcome a strong presumption that counsel's tactics were matters of sound trial strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

In this case, defendant was found guilty of OWI, and OWI is governed by MCL 257.625, which provides in relevant part:

> (1) A person, whether licensed or not, shall not operate a vehicle on a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means any of the following:
>
> (a) The person is under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance.
>
> (b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood . . . .

* * *

Accordingly, an OWI conviction can be premised on a finding that the defendant was "under the influence of" alcohol or on a finding that the defendant's BAC reached or exceeded 0.08.

Defendant's arguments stem from the premise that the jury was improperly led to believe that it could find defendant guilty based on an impermissible inference that his BAC was higher at the time he was driving than at was at the time his blood was drawn. The parties appear to agree that the evidence was insufficient to support a conviction based on the theory that defendant drove with a BAC higher than .08 and that the only permissible basis for a conviction was based on the

theory that defendant was impaired.[3] We agree with this premise because: at the time of the blood test, defendant's BAC was only 0.064; MCL 257.625a(6)(a) provides that "[t]he amount of alcohol . . . in a driver's blood . . . at the time alleged as shown by chemical analysis of the person's blood . . . is presumed to be the same as at the time the person operated the vehicle;" and no evidence was presented regarding rates of alcohol absorption. We conclude that defense counsel erred by: (1) failing to object to the trial court's instruction that a conviction could be based on either theory; (2) failing to request an instruction regarding the permissible use of the evidence pertaining to defendant's BAC; and (3) failing to object to improper arguments by the prosecutor suggesting that the jury could convict defendant pursuant to either theory. We further conclude that the combination of these three errors denied defendant his right to a fair trial and that there is a reasonable probability that the outcome of defendant's trial would have been different but for these mistakes. Finally, we disagree with the dissent's contention that caselaw from the United States Supreme Court requires that we affirm.

## A. JURY INSTRUCTIONS

Defense counsel erred by failing to object to a jury instruction providing that the jury could find defendant guilty based on multiple theories. Defense counsel likewise erred by failing to request instructions clarifying how the evidence pertaining to defendant's BAC could permissibly be used.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). The trial court "must properly instruct the jury so that [the jury] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citations omitted). It is improper for a court to give instructions regarding a theory that is not supported by the evidence. *People v Mills*, 45880 Mich 61, 81-82; 537 NW2d 909 (1995).

As it pertained to the OWI charge, the trial court provided the following instructions, which were consistent with M Crim JI 15.2, in relevant part:

> Defendant is also charged with the crime of operating a motor vehicle while intoxicated with a—an unlawful blood alcohol level or while under the influence of alcohol. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt.

\* \* \*

---

[3] In its brief, the prosecution concedes that "it may have been erroneous to" instruct the jury regarding the high-BAC theory "in the absence of expert testimony," but contends that it was a harmless error.

Third, that the Defendant was intoxicated. That is the defendant operated the vehicle with a blood alcohol level of point zero eight grams or more per 100 milliliters of blood or operated a vehicle while under the influence.

These instructions were clearly improper as they provided in no uncertain terms that it was permissible to find defendant guilty based on a conclusion that his BAC reached 0.08, but as discussed above and conceded by the prosecution, the evidence was insufficient to support this theory. It is true that we defer to trial counsel on matters of trial strategy, *Traver*, 328 Mich App at 422-423, but we can surmise no reasonable strategy behind allowing the jury to be instructed that it could find defendant guilty based on an impermissible theory.

Furthermore, there were additional instructions that would have been helpful to defendant as it related to the issue of his BAC that defense counsel could and should have requested. In particular, M Crim JI 15.5(6) provides: "You may infer that the defendant's bodily alcohol content at the time of the test was the same as [his / her] bodily alcohol content at the time [he / she] operated the motor vehicle." (Bracketed material in original.) This instruction mirrors MCL 257.625a(6)(a), which provides:

The amount of alcohol or presence of a controlled substance or other intoxicating substance in a driver's blood or urine or the amount of alcohol in a person's breath at the time alleged as shown by chemical analysis of the person's blood, urine, or breath is admissible into evidence in any civil or criminal proceeding and is presumed to be the same as at the time the person operated the vehicle.

This instruction would have been immeasurably helpful to defendant's case because his BAC was measured at .064, and the jury would have been told that it was therefore free to infer that his BAC was .064 at the time he was driving.

## B. PROSECUTORIAL MISCONDUCT

The prosecution made arguments suggesting that the jury could infer that defendant's BAC was higher than the legal limit at the time he was driving, and defense counsel erred by failing to object to this argument.

"During a criminal trial, prosecutors serve truth and justice first. The job isn't just to win, but to win fairly, staying well within the rules." *People v Evans*, 335 Mich App 76, 89; 966 NW2d 402 (2020) (quotation marks and citation omitted). To that end, "[p]rosecutors may not make a statement of fact to the jury that is unsupported by the evidence, but they are free to argue the evidence and all reasonable inferences arising from it as they relate to the theory of the case." *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000).

The prosecution made the following statements during closing arguments that defendant argues were improper:

[Y]ou have a blood result that's two hours later. Well, that is both direct evidence of his alcohol level, but also circumstantially, given what transpired, I'm asking you to conclude, no. No. This isn't [merely] impaired. He was under the influence.

He has an unlawful bodily alcohol level. At the time he was driving, his bodily alcohol-level was over the legal limit. Or at the legal limit. Which means he's guilty.

These comments were clearly an invitation for the jury to find defendant guilty based on an inference that his BAC exceeded the legal limit at the time he was driving. However, as noted multiple times in this opinion, there was no evidence supporting such an argument, and prosecutors are not permitted to make statements that are unsupported by the evidence. *Id.* We again can surmise no reasonable strategy that could support defense counsel's decision to allow the prosecutor to argue to the jury that it could rely on an impermissible theory to find defendant guilty. Therefore, we conclude that defense counsel rendered ineffective assistance by failing to object to this argument.

## C. PREJUDICE

There is a reasonable probability that the outcome of the proceeding would have been different if not for defense counsel's errors because the record suggests that the jury believed it was free to infer that defendant's BAC exceeded the legal limit when he was driving.

To establish a valid claim of ineffective assistance of counsel, defendant must establish that "a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks and citation omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "A defendant may meet this burden even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citation omitted). Moreover, "where there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *Id.* (quotation marks, citation, and alteration omitted).

"When the defendant stands convicted on one of two theories, one of which is permissible and one of which is not, the inability to say for sure on which the conviction rests demands reversal." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014), quoting *People v Gilbert*, 55 Mich App 168, 174; 222 NW2d 305 (1974). That is exactly what happened in this case. When tested, defendant's BAC was only 0.064, and no evidence regarding alcohol absorption was presented. Therefore, it was impermissible for defendant to be convicted pursuant to a theory that his BAC exceeded the maximum allowable threshold. However, the trial court explicitly instructed the jury that it was free to find defendant guilty based on an impermissible theory. Because jurors are presumed to follow their instructions, *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008), we are left to presume that the jurors believed themselves free to extrapolate defendant's BAC. This alone is likely sufficient to warrant reversal, but the harm inflicted by this error was more damaging when it is considered in connection with the improper

-6-

argument. See *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003) ("The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not.") The prosecutor urged the jury to conclude that defendant's BAC exceeded the legal limit then the court shortly thereafter instructed the jury that doing so would be permissible. A layperson with only general knowledge of the law and biology, having been told by the prosecutor and court that it was free to find that defendant's BAC exceeded the legal limit at the time of the traffic stop, likely would not hesitate to speculate about the fact defendant's BAC was only .016 below the legal limit two hours after he had been stopped. This risk could have been tempered by the reading of M Crim JI 15.5(6), but defense counsel inexplicably failed to request it. The risk that the jury improperly made inferences regarding defendant's BAC overwhelms any legitimate bases for guilt in this case, and the fact that defense counsel allowed this to happen without any sort of intervention constitutes a valid claim of ineffective assistance of counsel. We therefore must reverse defendant's conviction.

We disagree with the dissent's contention that the evidence that defendant drove while under the influence of alcohol was "overwhelming." "To prove a person was 'under the influence' of alcoholic liquor, a controlled substance, or other intoxicating substance, the prosecution 'must prove that defendant's ability to drive was substantially and materially affected by consumption' of the relevant substance." *People v Bowden*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357976); slip op at 8, quoting *People v Lambert*, 395 Mich 296, 305; 235 NW2d 338 (1975). There was no evidence that defendant's vehicle was "weaving from side to side," that his vehicle was "swerving," that he failed a field sobriety test, that he was "stumbling out of a vehicle and unable to walk without falling over," or that he was "speaking incoherently or in a confused manner." *People v Mikulen*, 324 Mich App 14, 24; 919 NW2d 454 (2018) (discussing objective signs of impairment in the context of the lesser offense of operating while visibly impaired). However, there was evidence that defendant drove more than double the speed limit, had his bright headlights engaged, accelerated when the arresting officer activated his lights after initially braking, consumed three to four drinks before driving, had bloodshot eyes, and was slurring his speech. The problem is that we observe a distinct risk that the jury viewed this evidence of defendant's impairment as probative of his BAC. In other words, it's possible, if not likely, that the jury believed that the evidence discussed above supported an inference that defendant's BAC exceeded 0.08 when he was driving.

To be clear, we are not saying that defendant is innocent or that we believe he definitely would have been acquitted if these errors had not occurred. Rather, we simply cannot say with confidence that the jury did not impermissibly infer that defendant's BAC exceeded the permissible threshold when he drove. Our conclusion that defendant established the prejudice prong is bolstered significantly by the fact that the jury was instructed regarding the lesser included offense of operating a motor vehicle when visibly impaired (OWVI), MCL 257.625(3). A conviction of OWVI requires proof "that defendant's ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful and prudent driver." *Lambert*, 395 Mich at 305. If it had been clear to the jury that it could not find that defendant's BAC exceeded 0.08 then there is a reasonable probability that it would have found that his capacity to drive was only so diminished as to warrant a conviction of OWVI as opposed to OWI.

We cannot share the dissent's confidence that the jury absolutely did not consider the possibility that defendant's BAC was higher than 0.064 at the time he operated his vehicle. We reiterate that, to obtain appellate relief, defendant does not need to establish that the jury did consider it or even that the jury probably considered it. Indeed, reversal is warranted "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citation omitted). The question we are tasked with answering is whether there is a reasonable probability that the jury based its verdict on the premise that defendant's BAC decreased after he stopped driving but before the test, and we conclude that there is such a probability.

For these reasons, we conclude that defendant has established a reasonable probability that the outcome of his trial would be different if not for his attorney's mistakes.

## D.  *GRIFFIN V UNITED STATES*

We disagree with the dissent's contention that *Griffin v United States*, 502 US 46; 112 S Ct 466; 116 L Ed2d 371 (1991) requires that we affirm because *Griffin* was not decided in the context of ineffective assistance of counsel and because the United States Supreme Court's interpretation of the United States Constitution in *Griffin* is inconsistent with how Michigan courts have interpreted the Michigan Constitution.

The dissent agrees that defense counsel rendered ineffective assistance by failing to object to the trial court's improper instruction regarding the permissible theories for conviction. While the opinion does not specify, the dissent likewise appears to concur with our conclusion that defense counsel erred by failing to object to the prosecution's improper argument. However, the dissent does not believe that these errors warrant reversal of defendant's conviction because there was "sufficient admissible evidence supported Urbanski's conviction on the alternative theory that he drove while under the influence of alcoholic liquor." There may or may not have been sufficient evidence to support a conviction pursuant to the "under the influence" theory; however, that this is not the test for ineffective assistance of counsel. To establish the prejudice prong in an ineffective assistance case, the defendant need only establish that there is a reasonable probability the outcome of the trial would have been different if not for defense counsel's errors. *Head*, 323 Mich App at 539. This can be achieved irrespective of whether there was sufficient admissible evidence to support the conviction. Indeed, our Supreme Court, as recently as 2019, reversed this Court's decision in an ineffective assistance case for failing to use the "reasonable probability" standard when assessing prejudice. *People v Hawkins*, 505 Mich 937; 936 NW2d 452 (2019).[4]

## 1. OVERVIEW OF *GRIFFIN*

The dissent heavily relies on *Griffin v United States*. In *Griffin*, 502 US at 48, the defendant was charged with fraud pursuant to two distinct theories, the evidence was only

---

[4] In *Hawkins*, the Supreme Court noted that this Court "quoted the 'reasonable probability' standard" but nevertheless concluded that it had not genuinely been applied. *Hawkins*, 505 Mich at 937.

sufficient to prove one of those theories beyond a reasonable doubt, and she was convicted pursuant to a general verdict of guilty that did not specify the theory upon which the verdict relied. *Id*. The Supreme Court of the United States concluded that "a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." *Id*. at 49. The United States Supreme Court drew a distinction between cases in which the invalid ground was due to a legal inadequacy rather than an evidentiary one:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence. [*Id*. at 59 (citation omitted).]

Put differently, *Griffin* involved a situation in which: (1) the jury was presented with two theories from which it could find defendant guilty; (2) theory A was a permissible basis for a conviction while theory B was an impermissible basis; (3) the jury found defendant guilty pursuant to a general verdict that did not specify the theory of guilt; and (4) it is impossible to ascertain whether the conviction was based on theory A or theory B. The United States Supreme Court divided such cases into two categories based on the reason for theory B's impermissibility. If theory B was impermissible because of a *legal inadequacy*, the conviction must be reversed because jurors are not equipped to discern such legal inadequacies. However, if theory B was impermissible because *the evidence presented at trial was insufficient* to prove theory B, then the conviction would stand because jurors, by their very nature, are equipped to assess and weigh the evidence.

The dissent's reliance on *Griffin* in the context of this case is problematic for two reasons. First, *Griffin* is inconsistent with how our courts have interpreted the Michigan Constitution. Second, unlike the present case, *Griffin* was not decided in the context of a claim of ineffective assistance of counsel.

## 2. APPLICABILITY OF *GRIFFIN* IN MICHIGAN

The United States Supreme Court's interpretation of the United States Constitution does not bind us with respect to our interpretation of the Michigan Constitution, and the dissenting opinion runs contrary to a long line of Michigan cases. The foundational case on this topic was *People v Gilbert*, 55 Mich App 168, 174; 222 NW2d 305 (1974),[5] in which this Court first declared

---

[5] Published opinions of this Court that were issued before November 1, 1990 are not binding, but they may be considered for their persuasive value. MCR 7.215(J)(1); *People v Barbarich*, 291 Mich App 468, 476 n 2; 807 NW2d 56 (2011).

that "[w]hen the defendant stands convicted on one of two theories, one of which is permissible and one of which is not, the inability to say for sure on which the conviction rests demands reversal." In that case, the evidence only supported premeditated murder, but the jury was also instructed on felony murder; because it was not clear which theory the jury used, the conviction was reversed. *Id*. at 173-174. In *People v Acosta*, 153 Mich App 504, 510; 396 NW2d 463 (1986), this Court quoted *Gilbert* for its assertion that a conviction must be reversed if it is impossible to discern whether it was based on a permissible theory. In that case, while it was not clear which theory was used by the jury to convict the defendant, the conviction was upheld because this Court concluded that *both* theories were supported by sufficient evidence. *Id*. at 510-511.

Unpublished opinions issued after the United States Supreme Court decided *Griffin* reinforce that the rule articulated by this Court in *Gilbert* continues to be the prevailing approach with respect to Michigan's Constitution.[6] In *People v Anderson*, unpublished per curiam opinion of the Court of Appeals, issued May 21, 2002 (Docket No. 230158), p 2, this Court cited *Acosta* for the proposition that a jury need not specify which of two theories supported its guilty verdict if there was sufficient evidence to support a conviction pursuant to either theory. In that case, the defendant's felony-murder conviction was affirmed because, while it was not clear if the predicate felony was robbery or home invasion, there was sufficient evidence for either theory. *Id*. at 1-3. In *People v Makens*, unpublished per curiam opinion of the Court of Appeals, issued October 28, 2003 (Docket No. 233458), p 1, the defendant was found guilty of larceny, and this Court, citing *Gilbert* and *Acosta*, reversed defendant's conviction. This Court explained that reversal was warranted because the evidence was sufficient only for a conviction pursuant to an agency theory, the jury was also allowed to consider an aiding and abetting theory, and it could not be determined which theory formed the basis for the conviction. *Id*. at 2-4. Finally, in *People v Richter*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2022 (Docket No. 355577 and 355578), pp 8-9, the defendant was found guilty of felony-murder, and it could not be determined which offense was used as the predicate felony. This Court, citing *Gilbert*, concluded that the inability to determine whether the conviction was based on a predicate felony for which there was sufficient evidence mandated reversal of the conviction.

These cases establish that it has for decades been the law in Michigan that a conviction cannot stand if a reviewing court cannot discern whether the conviction was based on a theory for which there was insufficient evidence.[7] None of the cases discussed above are binding, but *Vandenberg* is binding. While *Vandenberg* involved a situation in which the conviction might have been based on an unconstitutional theory, as opposed to one for which there was insufficient evidence, it nevertheless used the same quotation from *Gilbert* that for decades has stood for the

---

[6] Unpublished opinions of this Court are not binding, but may be considered for their persuasive value. *People v Kloosterman*, 296 Mich App 636, 641 n 2; 823 NW2d 134 (2012).

[7] The dissent relies on a footnote in *People v Chelmicki*, 305 Mich App 58, 65 n 1; 850 NW2d 612 (2014) to suggest that *Griffin* has been adopted by Michigan Courts. However, the dissent concedes *Chelmicki* only "appears to have accepted and applied *Griffin* albeit not entirely clearly." As detailed above, for 49 years this Court has decided numerous cases in a manner clearly inconsistent with *Griffin*. We therefore disagree with the dissent's contention that *Chelmicki* stands for the proposition that *Griffin* has been adopted in Michigan.

broader proposition articulated above. *Vandenberg*, 307 Mich App at 68. It is well-established that Michigan courts are free to interpret its Constitution as offering greater protection than the United States Constitution. See *People v Tanner*, 496 Mich 199, 221; 853 NW2d 653 (2014) ("We may not disregard the guarantees that our constitution confers on Michigan citizens merely because the United States Supreme Court has withdrawn or not extended such protection under the federal Constitution." (quotation marks and citation omitted)); see also *Sitz v Dep't of State Police*, 443 Mich 744, 762; 506 NW2d 209 (1993) ("As a matter of simple logic, because the texts were written at different times by different people, the protections afforded may be greater, lesser, or the same."). Therefore, we conclude that when the jury is allowed to choose between two theories and one of the theories is impermissible, Michigan's Constitution offers more protection than the United States Constitution, and a conviction cannot stand regardless of the reason why the theory was impermissible.

### 3. APPLYING *GRIFFIN* IN THE CONTEXT OF INEFFECTIVE ASSISTANCE

Even if *Griffin* represented a binding interpretation of Michigan's Constitution, we would still conclude that defendant established a valid claim of ineffective assistance of counsel. That is because *Griffin* did not involve an ineffective assistance of counsel analysis, and our Supreme Court has repeatedly made it clear that it is not acceptable to supplant the "reasonable probability" test. See, e.g., *People v Jurewicz*, 506 Mich 914; 948 NW2d 448 (2020) (rejecting Court of Appeals contention that "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense" (quotation marks and citation omitted)). Thus, even if *Griffin* were to be fully adopted by Michigan Courts, the test for prejudice in the context of ineffective assistance of counsel would still be whether there is a reasonable probability that the outcome would have been different but for counsel's errors. *Griffin* would only mandate that defendant's conviction be affirmed if the impermissible BAC theory had been presented to the jury through no fault of defense counsel. However, because the impermissible theory was presented to the jury as a direct result of defense counsel's failings, we would still be tasked with answering whether there is a reasonable probability that the jury chose the impermissible theory in the context of that particular case. Therefore, we still would not be bound by *Griffin* to affirm defendant's conviction.

### 4. APPLYING *GILBERT* AND ITS PROGENY IN THE CONTEXT OF INEFFECTIVE ASSISTANCE

As discussed in section II.D.2 *supra*, there is a decades old line of Michigan jurisprudence, beginning with *Gilbert* and leading to *Vandenberg*, establishing that a conviction cannot stand if it cannot be determined whether it was based on a permissible or an impermissible theory—regardless of why the latter theory was impermissible. Similar to *Griffin*, *Vandenberg* and its predecessors also were not decided on ineffective assistance of counsel grounds. Thus, we are tasked with determining the outcome when a defense attorney's mistakes create a scenario in which an impermissible theory was presented to the jury, and it is impossible to know whether this theory was the basis for the conviction. The principles guiding the cases discussed above are also illustrative in this context because the same risks are at play regardless of the analytical framework used by the reviewing court. If there is no way to know if the jury chose the impermissible theory then it follows that there is a reasonable probability that the jury did choose the impermissible

theory. Thus, there likewise is a reasonable probability that the outcome of the trial would have been different had the jury not been presented with the impermissible theory.

## E. HABITUAL OFFENDER STATUS

Finally, we note that the judgment of sentence indicates that defendant was sentenced as a second-offense habitual offender pursuant to MCL 769.10(1)(a). This was an error because the habitual offender statute applies only when "a person has been convicted of a felony" and then "commits a subsequent felony," MCL 769.10(1), but OWI is a misdemeanor. MCL 257.625(9)(a). On remand, the habitual offender notice shall be dismissed, and if defendant is retried and again convicted, he shall not be sentenced as a habitual offender.

## III. CONCLUSION

Defense counsel failed to intervene as the prosecutor urged conviction based on an impermissible theory and as the trial court offered instructions reinforcing the improper arguments. Moreover, defense counsel failed to request jury instructions that would have apprised the jury of the acceptable use of his blood alcohol test. Therefore, defendant's conviction of OWI is reversed. This case is remanded to the trial court for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michelle M. Rick